IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 25-12501

---

TIMOTHY GARDNER, et al.,

*Plaintiffs-Appellants*,

v.

STEPHEN JESSUP,

*Defendant-Appellee.*

---

OPENING BRIEF OF PLAINTIFFS-APPELLANTS TIMOTHY GARDNER,
TECK ELECTRIC, LLC, AND PETER STRICKLAND

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

---

Jake Evans
Philip J. George
Mikayla Mobley
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
jake.evans@gtlaw.com
philip.george@gtlaw.com
mikayla.mobley@gtlaw.com

*Counsel for Plaintiffs-Appellants Timothy Gardner,
Teck Electric, LLC, and Peter Strickland*

***TIMOTHY GARDNER, et al. v. STEPHEN JESSUP***
**CASE NO. 25-12501**

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Rule 26.1-1, Plaintiffs-Appellants, Timothy Gardner, Teck Electric, LLC, and Peter

Strickland provide the following certificate of interested persons:

1. Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, LLP –

    Counsel for Defendant-Appellee

2. Cheesbro, The Honorable Benjamin W. – U.S. Magistrate Judge

3. Evans, Jake – Counsel for Plaintiffs-Appellants

4. Gardner, Timothy – Plaintiff-Appellee

5. George, Philip J. – Counsel for Plaintiffs-Appellants

6. Godbey Wood, The Honorable Lisa – U.S. District Judge

7. Greenberg Traurig, LLP – Counsel for Plaintiffs-Appellants

8. Hancock, Emily Rose – Counsel for Defendant-Appellee

9. Jessup, Stephen – Defendant-Appellee

10. Mobley, Mikayla – Counsel for Plaintiffs-Appellants

11. Strickland, Peter – Plaintiff-Appellee

12. Strickland, Richard K. – Counsel for Defendant-Appellee

13. Teck Electric, LLC – Plaintiff-Appellee

C-1 of 2

***TIMOTHY GARDNER, et al. v. STEPHEN JESSUP***
**CASE NO. 25-12501**

**CERTIFICATE OF INTERESTED PERSONS AND**
**<u>CORPORATE DISCLOSURE STATEMENT</u>**
(Continued)

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Plaintiffs-Appellants state that there is no parent corporation or any publicly held corporation owning 10% or more of Teck Electric, LLC's stock. Plaintiffs-Appellants further state that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ *Jake Evans*
Jake Evans

C-2 of 2

**STATEMENT REGARDING ORAL ARGUMENT**

This appeal asks this Court to follow the majority of courts that find a private right of action exists under Section 11(b) of the Voting Rights Act. While most of the courts in this circuit and in other circuits hold that a private right of action exists under Section 11(b), this Court has not yet had the opportunity to opine on this issue. Accordingly, Plaintiffs-Appellants, Timothy Gardner, Teck Electric, LLC, and Peter Strickland respectfully submit that oral argument would be of material benefit to the Court to address the important issue raised in this appeal.

i

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ...............................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................. i

TABLE OF CITATIONS .................................................................................... iv

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUE...............................................................................1

STATEMENT OF THE CASE AND FACTS .......................................................2

    I. STATEMENT OF THE CASE...................................................................2

    II. STATEMENT OF THE FACTS. ..........................................................2

SUMMARY OF ARGUMENT ...............................................................................7

ARGUMENT ...........................................................................................................8

    I. STANDARD OF REVIEW. ......................................................................8

    II. SECTION 11(B) CONTAINS A PRIVATE RIGHT OF ACTION. ......8

        A. SECTION 11(b) SATISFIES PART 1 OF THE *SANDOVAL* TEST

        BECAUSE IT CONTAINS RIGHTS-CREATING LANGUAGE.......13

        B. SECTION 11(b) SATISFIES PART TWO OF THE *SANDOVAL*

        TEST BECAUSE IT PROVIDES A PRIVATE REMEDY. ................17

III. BECAUSE OTHER PROVISIONS OF THE VRA HAVE PRIVATE RIGHTS OF ACTION, THIS SUPPORTS FINDING ONE UNDER SECTION 11(B). ..................................................................22

IV. STRICKLAND WILL PURSUE ALL AVAILABLE REMEDIES AGAINST JESSUP UNDER THE VRA. ...............................................29

CONCLUSION ........................................................................................31

CERTIFICATE OF COMPLIANCE ........................................................33

CERTIFICATE OF SERVICE ..................................................................34

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
  532 U.S. 275 (2001)..................................... 7, 8, 9, 11, 13, 16, 17, 18, 20, 22, 23

*Allen v. City of Graham,*
  No. 1:20-CV-997 ...............................................................................12, 23

*Allen v. State Bd. of Elections,*
  393 U.S. 544 (1969)..................................................................22, 23, 29

*Andrews v. D'Souza,*
  696 F. Supp. 3d 1332 (N.D. Ga. 2023).......................................................12, 20

*Ariz. All. for Retired Americans v. Clean Elections USA,*
  638 F. Supp. 3d 1033 (D. Ariz. 2022), *opinion vacated*, *appeal
  dismissed as moot*, No. 22-16689, 2023 WL 1097766 (9th Cir. Jan.
  26, 2023) ....................................................................................11, 18

*Ariz. Democratic Party v. Ariz. Republican Party,*
  No. 16-CV-03752, 2016 WL 8669978 (D. Ariz. Nov. 4, 2016) .................28, 30

*Brnovich v. Democratic Nat'l Comm.,*
  594 U.S. 647 (2021)........................................................................10

*Coal. for Good Governance v. Kemp,*
  No. 1:21-CV-02070-JPB, 2021 WL 12299010 (N.D. Ga. Dec. 9,
  2021) ........................................................................................10

*Colo. Mont. Wyo. State Area Conf. of NAACP v. U.S. Election
  Integrity Plan,*
  653 F. Supp. 3d 861 (D. Colo. 2023)..............................................15

*Colo. Mont. Wyo. State Area Conference of the NAACP v. U.S.
  Election Integrity Plan,*
  No. 22-cv-00581-PAB (D. Colo. Apr. 28, 2022) ...............................30

iv

*Council on Am.-Islamic Rels.-Minn. v. Atlas Aegis, LLC*,
    497 F. Supp. 3d 371 (D. Minn. 2020) ................................................................... 12

*Fair Fight Inc. v. True the Vote*,
    710 F. Supp. 3d 1237 (N.D. Ga. 2024) ................................................... 10, 12, 21

*Fair Fight Inc. v. True the Vote*,
    No. 2:20-CV-00302-SCJ, 2023 WL 11909714 (N.D. Ga. Sept. 13,
    2023) ..................................................................................................................... 30

*Fair Fight Inc. v. True the Vote*,
    No. 2:20-CV-00302-SCJ, 2024 WL 24524 (N.D. Ga. Jan. 2, 2024) ................. 30

*Fl. Comm'r of Agric. v. Att'y Gen. of U.S.*,
    148 F.4th 1307 (11th Cir. 2025) ........................................................................... 8

*Ga. State Conf. of NAACP v. Ga.*,
    No. 1:21-CV-5338-ELB-SCJ-SDG, 2022 WL 18780945 (N.D. Ga.
    Sept. 26, 2022) .......................................................... 9, 15, 18, 20, 24, 25, 26, 27

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) .............................................................................................. 17

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    599 U.S. 166 (2023) .............................................................................................. 17

*Kennedy v. Meta Platforms, Inc.*,
    No. 3:24-CV-02869-WHO, 2024 WL 4031486 (N.D. Ca. Sept. 3,
    2024) ........................................................................................................ 11, 18, 20

*Krabach v. King Cnty.*,
    No. 2:22-CV-1252-BJR, 2023 WL 7018431 (W.D. Wash. Oct. 25,
    2023) ................................................................................................................ 11, 18

*League of United Latin Am. Citizens - Richmond Region Council 4614
    v. Pub. Int. Legal Found.*,
    No. 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018)
    ...................................................................................................... 12, 18, 19, 20, 21

*League of Women Voters of N.H. v. Kramer*,
    No. 24-CV-73-SM-TSM, 2025 WL 919897 (D.N.H. Mar. 26,
    2025) ..................................................................................................................... 10

*Love v. Delta Air Lines*,
   310 F.3d 1347 (11th Cir. 2002) ...............................................................8

*Mi Familia Vota v. Abbott*,
   497 F. Supp. 3d 195 (W.D. Tex. 2020) ...............................................27

*Mich. Welfare Rights Org. v. Trump*,
   600 F. Supp. 3d 85 (D.D.C. 2022)..................................... 11, 18, 22, 23, 27, 28

*Morse v. Republican Party of Va.*,
   517 U.S. 186 (1996) (plurality opinion) ................................23, 24, 28

*Nat'l Coal. on Black Civic Participation v. Wohl*,
   498 F. Supp. 3d 457 (S.D.N.Y. 2020) ...............................................30

*Nat'l Coal. on Black Civic Participation v. Wohl*,
   512 F. Supp. 3d 500 (S.D.N.Y. 2021) ......................................11, 18, 19, 20, 28

*Rhodes v. Siver*,
   No. 19-12550, 2021 WL 1565137 (E.D. Mich. Feb. 1, 2021) ....................19, 20

*Rhodes v. Siver*,
   No. 19-12550, 2021 WL 912393 (E.D. Mich. Mar. 10, 2021)...............12, 18, 27

*Schilling v. Washburne,*
   *592 F. Supp. 3d 492 (W.D. Va. 2022)* ...............................................16

*Schwier v. Cox*,
   340 F.3d 1284 (11th Cir. 2003) ...................................10, 13, 14, 16, 28

*Shotz v. City of Plantation, Fla.*,
   344 F.3d 1161 (11th Cir. 2003) ...............................................9, 14

*White v. State of Ala.*,
   74 F.3d 1058 (11th Cir. 1996) ...............................................18

*Willingham v. Cnty. of Albany*,
   593 F. Supp. 2d. 446 (N.D.N.Y. 2006)...............................................19

*Ex parte Yarborough*,
   110 U.S. ...............................................................21

vi

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017)..................................................................................23

**Statutes**

20 U.S.C. § 1232g(b)(1) ...............................................................................17

28 U.S.C. § 1291 .............................................................................................1

28 U.S.C. § 1331 .............................................................................................1

42 U.S.C. § 1971(a)(2)(B) ............................................................................13

42 U.S.C. § 1983 ........................................................................................1, 3

42 U.S.C. § 12203(a) ....................................................................................14

52 U.S.C. § 10101(a)(2)(B) ..........................................................................13

52 U.S.C. § 10301 .........................................................................................25

52 U.S.C. § 10302(a) ....................................................................................25

52 U.S.C. § 10304 Section 5..............................................................22, 23, 29

52 U.S.C. § 10306 Section 10........................................11, 18, 23, 24, 28

52 U.S.C. § 10307(b) ............................ 1, 2,5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 17, 26

52 U.S.C. § 10308(d) ....................................................................................29

52 U.S.C. § 10310(e) ...............................................................................25, 29

**Other Authorities**

Fourteenth Amendment
   ................................................. 5, 6, 11, 18, 19, 20, 21, 22, 25, 26, 27

Fifteenth Amendment ......................... 5, 6, 11, 17, 18, 19, 20, 21, 22, 25, 26, 27, 29

11th Cir. R. 32-4 ...........................................................................................33

Eleventh Circuit Rule 26.1-1 ..........................................................................1

Eleventh Circuit Rules 26.1-1 through 26.1-3.................................................2

Fed. R. App. P. 32(a)(5) .................................................................33

Fed. R. App. P. 32(a)(6) .................................................................33

Fed. R. App. P. 32(a)(7)(B) ............................................................33

Federal Rule of Appellate Procedure 26.1 ....................................1, 2

H.R. Rep. No. 89-439 .....................................................................19

H.R. Rep. No. 89-439 (1965) ......................................................21, 22

H.R. Rep. No. 89-439 (1965) ..........................................................26

H.R. Rep. No. 89-439 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2437 ...................18

U.S. Const. amend. XV ...................................................................26

U.S. Const. art. I § 4 ......................................................................21

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 because Plaintiffs-Appellants Timothy Gardner ("Gardner"), Teck Electric, LLC ("Teck"), and Peter Strickland ("Strickland") (collectively, "Plaintiffs" or "Appellants") brought claims under 42 U.S.C. § 1983 and 52 U.S.C. § 10307(b) ("Section 11(b)").

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court entered a final order (the "Order") granting Defendant-Appellee Stephen Jessup ("Jessup" or "Appellee")'s motion to dismiss Appellants' federal claims and declining to exercise supplemental jurisdiction over Appellants' state claims.

The district court entered the Order on June 26, 2025, and the underlying judgment (the "Judgment") on June 27, 2025. Plaintiffs timely filed the Notice of Appeal on July 23, 2025.

## STATEMENT OF THE ISSUE

Whether the district court erred in dismissing Count VI of the operative Complaint[1] for violation of Section 11(b) of the Voting Rights Act of 1965 (the "Act" or "VRA") for lack of jurisdiction, finding Section 11(b) does not include a private remedy and consequently does not provide a private right of action.

---

[1] As discussed below, the operative Complaint is the Verified Second Amended Complaint, Doc. 28 (the "Second Amended Complaint").

1

## STATEMENT OF THE CASE AND FACTS

### I.    STATEMENT OF THE CASE.

This appeal arises from the district court's Order granting the dismissal of Count VI of the Second Amended Complaint. In Count VI, Plaintiffs-Appellants plead that Jessup violated Section 11(b) of the VRA when Jessup attempted to intimidate Strickland from voting for Gardner to be the District Five – McIntosh County Commissioner. The district court committed reversible error when it dismissed Count VI by concluding that a private right of action does not exist under Section 11(b) because it does not include a private remedy. On review, the district court's ruling is entitled to no deference, and this Court should hold that a private right of action exists under Section 11(b) of the VRA. If the Court finds that Section 11(b) provides a private right of action, the district court's dismissal of Count VI was improper. This appeal addresses this issue in greater detail below.

### II.    STATEMENT OF THE FACTS.

On January 19, 2024, Plaintiffs Gardner, Teck, and Strickland filed a Verified Complaint against Jessup individually and in his official capacity as Sheriff of McIntosh County, Georgia. (Doc. No. 1, *Verified Complaint*). Following briefing on numerous issues not strictly relevant to this appeal Plaintiffs filed the operative Second Amended Complaint on June 12, 2025. (Doc. No. 28, *Verified Second*

2

*Amend. Complaint*; Doc. No. 29, *Verification*; Doc. No. 30, *Verification*; Doc. No. 37, *Notice of Filing Exhibits to Verified Second Amend. Complaint*).

In the Second Amended Complaint, Plaintiffs allege Gardner ran for the District Five – McIntosh County Commissioner seat against two other party candidates, Stuart Peterseim and Davis Poole, Jr. ("Poole"). (Doc. No. 28, p. 2 ¶ 3, p. 7 ¶¶ 31-32). Plaintiffs allege that after Jessup learned Gardner was running against Jessup's friend, Poole, Jessup intentionally interfered with Gardner's candidacy. (*Id.* at p. 2 ¶ 4). Gardner pleads claims for defamation (Count I), defamation *per se* (Count II), punitive damages (Count III), and a violation of 42 U.S.C. § 1983 (Count V). (*Id.* at pp. 12-21). Teck pleads claims for punitive damages (Count III) and tortious interference (Count V). (*Id.* at pp. 17-19). And Strickland pleads claims for punitive damages (Count III) and a violation of Section 11(b) of the VRA (Count VI). (*Id.* at pp. 17-18, 21-22).

Plaintiffs allege that "[w]hile on duty and wearing the McIntosh County Sheriff emblem on his clothing, Sheriff Jessup went door-to-door to residences located in McIntosh County and told constituents to vote for Mr. Poole." (Doc. No. 28, p. 8 ¶ 36). The Second Amended Complaint alleges Jessup told McIntosh County constituents not to vote for Gardner because he is a drug dealer and/or is the second largest drug dealer in McIntosh County. (*Id.* at p. 2 ¶ 5, pp. 8-9 ¶¶ 35-38, 41; Doc. No. 37, pp. 20-26). Further, Plaintiffs plead that while on duty and wearing the

3

McIntosh County Sheriff emblem on his clothing, Jessup drove Poole in his county-owned vehicle throughout McIntosh County and escorted Poole into government buildings to promote his candidacy. (Doc No. 28, p. 3 ¶ 7, p. 9 ¶¶ 40-41; Doc No. 37, pp. 4-6). During these visits, Jessup allegedly "told government employees not to vote for Mr. Gardner because he is a drug dealer and/or is the second largest drug dealer in McIntosh County[.]" (Doc No. 28, p. 9 ¶ 41). Jessup also allegedly instructed his "police officers to promote Mr. Poole's candidacy by directing them to drive throughout McIntosh County, while on duty, and tell constituents to vote for Mr. Poole and not to vote for Mr. Gardner." (*Id.* at p. 9 ¶ 42).

Additionally, the Second Amended Complaint alleges "Sheriff Jessup threatened and intimidated numerous McIntosh County constituents to secure votes for Mr. Poole." (*Id.* at pp. 2-3 ¶ 6, p. 10 ¶ 45). Plaintiffs allege "Jessup intimidated McIntosh County constituents by threatening negative consequences on them and/or their families if the constituents did not vote for Mr. Poole." (*Id.* at p. 10 ¶ 45). Plaintiffs also plead that "when Mr. Strickland stated that he planned to vote for Mr. Gardner, Sheriff Jessup intimidated him by insinuating that he would 'keep a special eye on him' if he did not vote for Mr. Poole." (*Id.* at p. 10 ¶ 46). Plaintiffs claimed that "Jessup's actions intimidated Mr. Strickland and put him in fear of retaliation." (*Id.*). As a result of Jessup's actions, Plaintiffs further plead that McIntosh County

constituents voted for Poole or refrained from voting in the primary election and/or the runoff election. (Doc. No. 28, p. 10 ¶¶ 47-48).

On June 26, 2024, Jessup filed a Motion to Dismiss the Second Amended Complaint for Failure to State a Claim ("the MTD"). (Doc. No. 32, *Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim*). Two weeks later, Plaintiffs filed a Response in Opposition to the MTD. (Doc. No. 34, *Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim*). And Jessup filed a Reply Brief in support of the MTD on July 24, 2024. (Doc. No. 36, *Defendant's Reply Brief in Support of His Motion to Dismiss Plaintiff's Second Amended Complaint*).

Nothing further occurred until February 21, 2025, when the district court noticed a hearing on the MTD. (*Feb. 21, 2025 Notice of Hearing* on Doc. No. 32; *Feb. 21, 2025 Set/Reset Hearings* on Doc. No. 32). On March 13, 2025, the parties appeared before the district court to present oral argument for/against the MTD. (Doc. No. 38, *Minute Entry*; Doc. No. 44, *Notice of Filing of Official Transcript*).

At the conclusion of the hearing, the district court asked the parties to submit supplemental briefing "address[ing] whether Section 11(b) of the [VRA] provides a private right of action and whether Section 11(b) enforces the guarantees provided in the Fourteenth and Fifteenth Amendments." (Doc. No. 38; Doc. No. 39, *Order*).

5

On March 27, 2025, the parties filed their supplemental briefs. (Doc. No. 40, *Defendant's Supplemental Brief in Support of His Motion to Dismiss Plaintiffs' Second Amended Complaint*; Doc. No. 41, *Plaintiffs' Supplemental Brief in Support of Their Response in Opposition to Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim*). In their supplemental brief, Plaintiffs argued that federal law establishes a private right of action under Section 11(b) which enforces the guarantees established by the Fourteenth and Fifteenth Amendments. (*See generally* Doc. No. 41).

On June 26, 2025, the district court entered the Order, granting, in part, the MTD. (Doc. No. 42, *Order*). The district court granted judgment in favor of Jessup as to Plaintiffs' federal claims and dismissed Plaintiffs' state claims without prejudice because it declined to exercise supplemental jurisdiction over their state claims. (*Id.* at pp. 22-23). The district court concluded that Section 11(b) does not create an implied private right of action because Section 11(b) contains rights-creating language but does not provide a private remedy. (*Id.* at pp. 10-21). Consequently, the district court dismissed Strickland's Section 11(b) claim. (*Id.* at 20-23). The next day, the district court entered the Judgment. (Doc. No. 43, *Judgment*).

The issue on appeal is whether the district court erred in concluding that a private remedy does not exist under Section 11(b).

6

**SUMMARY OF ARGUMENT**

The district court erroneously concluded that Section 11(b) does not provide a private remedy. Section 11(b) provides:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote[.]

52 U.S.C. § 10307(b).

An implied private cause of action exists where a statute contains (1) "rights-creating language" and (2) language demonstrating Congress's intent to provide a private remedy to enforce the right created. *Alexander v. Sandoval*, 532 U.S. 275 (2001). Section 11(b) contains "rights-creating" language because it identifies a class of persons ("any person voting or attempting to vote") and guarantees a right to those persons ("no person . . . shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce"). 52 U.S.C. § 10307(b).

Additionally, Section 11(b)'s broad, sweeping language demonstrates Congress's intent to provide a private remedy to enforce the right created. The statute contains "or otherwise" ("no person, whether acting under color of law ***or otherwise*** . . ."), and this language is indicative of Congress's intent to regulate both public and private conduct. 52 U.S.C. § 10307(b) (emphasis added). This language is also consistent with Congress's goal to realize, enforce, and protect the Fourteenth and Fifteenth Amendments' right to vote, which is further supported by Section 11(b)'s

7

legislative history. The statute itself, the entire statutory scheme, and caselaw interpreting the statute, all demonstrate that Section 11(b) provides a private remedy.

## ARGUMENT

## I.   STANDARD OF REVIEW.

This Court reviews a district court's ruling on a motion to dismiss for failure to state a claim for relief *de novo*. *Fl. Comm'r of Agric. v. Att'y Gen. of U.S.*, 148 F.4th 1307, 1314 (11th Cir. 2025). Whether a statute creates an implied private right of action is also reviewed *de novo*. *Love v. Delta Air Lines*, 310 F.3d 1347, 1351 (11th Cir. 2002).

## II.   SECTION 11(B) CONTAINS A PRIVATE RIGHT OF ACTION.

Section 11(b) of the VRA contains an implied private right of action. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Sandoval*, 532 U.S. at 286. "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* "Statutory intent on this latter point is determinative." *Id.*

In *Sandoval*, the Supreme Court established a two-part test to determine whether an implied private right of action exists under a federal statute. Under *Sandoval*, "an implied cause of action to sue under a federal statute" exists where "the statute at issue contains both (1) 'rights-creating language' and (2) language

8

demonstrating Congress's intent to provide a private remedy to enforce the right created." *Ga. State Conf. of NAACP v. Ga.*, No. 1:21-CV-5338-ELB-SCJ-SDG, 2022 WL 18780945, at *3 (N.D. Ga. Sept. 26, 2022) (three-judge court with Judge Branch) (per curium) (citing *Sandoval*, 532 U.S. at 286-88). If the statutory text and structure do not conclusively resolve whether there is an implied private right of action, then courts look to the statute's legislative history. *See Sandoval*, 532 U.S. at 288 ("In determining whether statutes create private rights of action . . . legal context matters only to the extent it clarifies text.").

In the Eleventh Circuit, "[t]he first rule in statutory construction is to determine whether the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute.'" *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003) (quoting *U.S. v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2002)), *cert. denied*, 537 U.S. 1112 (2003). If the statutory intent is unclear, the Court "employ[s] traditional canons of construction before 'reverting to legislative history . . . in determining the meaning of a particular statutory provision by focusing on the broader, statutory context.'" *Id.* (quoting *CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1225 (11th Cir. 2001)). "If the statutory language is ambiguous, however, courts may examine extrinsic materials, including legislative history, to determine Congressional intent." *Id.* (quoting *Fed. Reserve Bank of Atlanta v. Thomas,* 220 F.3d 1235, 1239 (11th Cir. 2000)).

9

While there is limited case law interpreting Section 11(b) itself, the statute's plain text, the majority of the case law, and the VRA's statutory scheme all show that there is an implied private right of action. This Court has found a private right of action exists under a similar section of the VRA. *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003). And a recent district court decision found that "the Supreme Court has assumed that an implied right of action exists under the VRA." *Coal. for Good Governance v. Kemp*, No. 1:21-CV-02070-JPB, 2021 WL 12299010, at *14 (N.D. Ga. Dec. 9, 2021) (finding the *Brnovich*[2] opinion confirms that the Supreme Court has assumed that an implied right of action exists under the VRA."); *see also Brnovich*, 594 U.S. at 690 (Gorsuch, J., concurring) (noting the Supreme Court has assumed Section 2 of the VRA furnishes an implied right of action).

Numerous courts have found that a private right of action exists under Section 11(b). *See, e.g.*, *Fair Fight Inc. v. True the Vote*, 710 F. Supp. 3d 1237, 1283 n.58 (N.D. Ga. 2024) ("*Fair Fight I*") (recognizing a private right of action under Section 11(b)); *Coal. for Good Governance*, 2021 WL 12299010, at *14 (finding plaintiffs "stated a plausible claim for relief under [Section 11(b)]" because defendants were unable to cite "any precedent that directly supports their contention that there is no private cause of action under [Section 11(b)]"); *League of Women Voters of N.H. v. Kramer*, No. 24-CV-73-SM-TSM, 2025 WL 919897, at *10 (D.N.H. Mar. 26, 2025)

---

[2] *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021).

10

(denying motion to dismiss because the individual plaintiffs stated a viable claim under Section 11(b) of the VRA based on calls using an AI-generated deepfake voice technology designed to suppress Democratic turnout); *Kennedy v. Meta Platforms, Inc.*, No. 3:24-CV-02869-WHO, 2024 WL 4031486, at *6 (N.D. Ca. Sept. 3, 2024) (Section 11(b) "is broad and protects both the right to vote and the right to urge others to vote . . . It is well established that § 11(b) 'reaches beyond government actors, affording a private right of action,' and reaching private conduct."); *Krabach v. King Cnty.*, No. 2:22-CV-1252-BJR, 2023 WL 7018431, at *3 (W.D. Wash. Oct. 25, 2023) (concluding Section 11(b) has a private right of action considering the Ninth Circuit's acceptance of a private right of action under the Act, as well as the persuasive authority from multiple jurisdictions concluding Congress intended to create an implied right of action under Section 11(b)); *Ariz. All. for Retired Americans v. Clean Elections USA*, 638 F. Supp. 3d 1033, 1041 (D. Ariz. 2022) ("[T]he 'or otherwise' language in the statute is indicative of Congressional intent to regulate both private and public conduct under Section 11(b)."), *opinion vacated, appeal dismissed as moot*, No. 22-16689, 2023 WL 1097766 (9th Cir. Jan. 26, 2023); *Mich. Welfare Rights Org. v. Trump*, 600 F. Supp. 3d 85, 106 (D.D.C. 2022) ("Since § 11(b) is, like § 10, 'by its terms, a statute designed for enforcement of the guarantees of the Fourteenth and Fifteenth Amendments,' . . . it meets the *Sandoval* test for an intent to create a private remedy."); *Nat'l Coal. on Black Civic*

11

*Participation v. Wohl*, 512 F. Supp. 3d 500, 509 (S.D.N.Y. 2021) (holding § 11(b) "applies to private conduct and can be enforced through suit by a private individual."); *Allen v. City of Graham*, No. 1:20-CV-997; 1:20-CV-998, 2021 WL 2223772, at *7 (M.D.N.C. June 2, 2021) ("Multiple courts have found that the statute extends to private conduct and establishes a private cause of action."); *Rhodes v. Siver*, No. 19-12550, 2021 WL 912393, at *2 (E.D. Mich. Mar. 10, 2021) ("*Rhodes I*") (holding a private cause of action exists under Section 11(b)); *Council on Am.-Islamic Rels.-Minn. v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 378-80 (D. Minn. 2020) (assuming private right of action under § 11(b)); *League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Int. Legal Found.* ("*LULAC*"), No. 1:18-CV-00423, 2018 WL 3848404, at *3 (E.D. Va. Aug. 13, 2018) (holding Section 11(b)'s language "'or otherwise' indicates Congressional intent to reach both government and private conduct under § 11(b).").[3]

As demonstrated in greater detail below, Section 11(b) contains rights-creating language that shows Congress intended to provide a private remedy to enforce the right created thereunder. The VRA's legislative history further affirms that an implied private right of action exists under Section 11(b).

---

[3] For the few cases where courts have not found a private right of action, those cases are easily distinguishable. *See, e.g.*, *Fair Fight I*, 710 F. Supp. 3d at 1283 n.58 (distinguishing *Andrews v. D'Souza*, 696 F. Supp. 3d 1332 (N.D. Ga. 2023)).

### A.   SECTION 11(b) SATISFIES PART 1 OF THE *SANDOVAL* TEST BECAUSE IT CONTAINS RIGHTS-CREATING LANGUAGE.

Section 11(b) contains "rights-creating language." To determine whether a statute contains rights-creating language, the Court must decide whether the statute "confer[s] rights on a particular class of persons." *Sandoval*, 532 U.S. at 289. Section 11(b) provides:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce **any person for voting or attempting to vote**[.]

52 U.S.C. § 10307(b) (emphasis added). Section 11(b) clearly identifies the class of persons as "any person voting or attempting to vote." *Id.*

The district court correctly held that Section 11(b) contains rights-creating language. The district court compared Section 11(b)'s language to the statutory language at issue in *Schwier*, 340 F.3d 1284[4], where this Court held that language mirroring Section 11(b) contains rights-creating language. (Doc. No. 42, pp. 12-13). The *Schwier* court correctly concluded that even though "[t]he subject of the sentence is the person acting under the color of state law, [ ] the focus of the text is nonetheless the protection of each individual's right to vote." (*Id.* at p. 13) (quoting

---

[4] *See* 52 U.S.C. § 10101(a)(2)(B) (formerly 42 U.S.C. § 1971(a)(2)(B)) ("No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election[.]").

13

*Schwier*, 340 F.3d at 1296). Section 11(b)'s text is likewise focused on protecting an individual's right to vote—"without intimidation, threat, or coercion."

The Eleventh Circuit has also found rights-creating language in other statutes mirroring Section 11(b). In *Shotz*, the Eleventh Circuit held there is rights-creating in 42 U.S.C. § 12203(a)[5], which states that "*[n]o person shall* discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . ." 344 F.3d at 1167-68 (emphasis added). The Court concluded that statute "specifically identifies a protected class and expressly confers on that class a right *not* to be retaliated against." *Id.* (emphasis in original). Congress's use of the word "person" further established that 42 U.S.C. § 12203(a) contains "distinct duty-creating language that plainly includes individuals[.]" *Id.* at 1168 ("Congress has been consistent: the meaning of a 'person' in comparable civil rights statutes has always included an individual."). Section 11(b) similarly starts with the language "no person shall", uses the word "person" twice in defining individuals' right to vote, and clearly identifies the class that should not be prohibited from voting.

---

[5] Notably, the Eleventh Circuit pointed to a provision related to 42 U.S.C. § 12203(a) containing similar language to Section 11(b), which makes it "unlawful to *coerce, intimidate, threaten, or interfere* with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." *Shotz*, 344 F.3d at n.4 (quoting 42 U.S.C. § 12203(b)) (emphasis added).

14

Virtually all courts addressing this issue have held that Section 11(b) contains rights-creating language, including a district court in the Eleventh Circuit. *See Colo. Mont. Wyo. State Area Conf. of NAACP v. U.S. Election Integrity Plan*, 653 F. Supp. 3d 861, 868 (D. Colo. 2023) (holding Section 11(b) "contains rights-creating language that pertains to any individual citizen."); *c.f.*, *Ga. State Conf. of NAACP*, 2022 WL 18780945, at *4 ("This provision identifies a specific 'right' in explicit terms. And it expressly defines the 'particular class of persons,' . . . that holds the right. If that is not rights-creating language, we are not sure what is.").

This point is driven home by the district court's holding in *Ga. State Conf. of NAACP*. In that case, the district court found that Section 2 of the VRA contains rights-creating language:

> We think it obvious that, by its clear terms, Section 2 guarantees a particular individual right to all citizens … The key language in the statute is contained in subsection (a): "No voting … standard, practice, or procedure shall be imposed or applied … in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote.

*Ga. State Conf. of NAACP*, 2022 WL 18780945, at *4. Section 2 and Section 11(b) use the same parallel structure for defining a right (the right to vote). Both sentences start in the negative explaining the actions that the state or a private individual cannot take and who the proclamation benefits (the individuals who are voting or attempting to vote). And both Section 2 and Section 11(b) of the VRA establish an independent

15

right to protect the right to vote. Section 11(b) also uses the same phrasing, sentence structure, and words as Section 2 and the statute in *Sandoval*.

Plaintiffs identified only one instance in which an out-of-circuit district court (erroneously) held that Section 11(b) does not include rights-creating language. In *Schilling v. Washburne*, a district court stated that "the '[n]o person . . . shall' language of § 10307(b) is directed to the regulated party, not the party to be protected." 592 F. Supp. 3d 492, 498 (W.D. Va. 2022). Because that court concluded Section 11(b) "address[es] the subject of the prohibited conduct rather than the person to benefit from its protection[,]" it held Section 11(b) "does not . . . confer any new right on voters" and consequently does not contain rights-creating language. *Id.* at 498-99.

The *Washburne* court erred by failing to acknowledge what the *Schwier* court correctly recognized—that although Section 11(b) contains language directed at the regulated party ("[n]o person . . . shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce . . ."), the focus of Section 11(b)'s language is to protect an individual's right to vote ("any person [ ] voting or attempting to vote"). 52 U.S.C. § 10307(b). And as the Supreme Court recently held, "[i]t would be strange to hold that a statutory provision fails to secure rights simply because it considers, alongside the rights bearers, the actors that might threaten those rights

16

(and [they] have never so held)." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 185 (2023).

The *Washburne* court also mistakenly compared Section 11(b)'s language to the Family Educational Rights and Privacy Act's language at issue in *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) where that statute <u>solely</u> focuses on the prohibited conduct of the regulated party. *See* 20 U.S.C. § 1232g(b)(1) ("No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records . . . of students without the written consent of their parents . . ."). That is not the case in Section 11(b).

For these reasons, Section 11(b) contains rights-creating language and meets part one of the *Sandoval* test.

## B. SECTION 11(b) SATISFIES PART TWO OF THE *SANDOVAL* TEST BECAUSE IT PROVIDES A PRIVATE REMEDY.

Section 11(b)'s "or otherwise" language and the VRA's statutory scheme demonstrates Congress's intent to provide a private remedy. Section 11(b) provides:

> No person, whether acting under color of law **or otherwise**, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote[.]

52 U.S.C. § 10307(b) (emphasis added).

Section 11(b) enforces the guarantees established by the 14th and 15th Amendments. "[T]he [VRA] was drafted to make the guarantees of the Fifteenth

17

Amendment finally a reality for <u>all</u> citizens." *White v. State of Ala.*, 74 F.3d 1058, 1069 (11th Cir. 1996) (citing *Allen v. State Bd. of Elections*, 393 U.S. 544, 556 (1969)) (emphasis added). "[N]o subjective purpose or intent need be shown" for there to be a Section 11(b) violation. H.R. Rep. No. 89-439, at 30 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2437, 2462. Accordingly, numerous courts have held that Section 11(b) provides a private remedy. *Mich. Welfare Rights Org.*, 600 F. Supp. 3d at 106 ("Since § 11(b) is, like § 10, 'by its terms, a statute designed for enforcement of the guarantees of the Fourteenth and Fifteenth Amendments,' . . . it meets the *Sandoval* test for an intent to create a private remedy."); *See*, *e.g.*, *Ga. State Conf. of NAACP*, 2022 WL 18780945, at *5-*7; *Kennedy*, 2024 WL 4031486, at *6; *Wohl*, 512 F. Supp. 3d at 509; *Krabach*, No. 2:22-CV-1252-BJR, 2023 WL 7018431, at *3; *Rhodes I*, No. 19-12550, 2021 WL 912393, at *2.

The language "or otherwise" demonstrates Congress's intent to reach private conduct. This text follows directly after the language "acting under color of law," thus providing that Section 11(b) violations may be committed by state actors *or* private actors. *See LULAC*, 2018 WL 3848404, at *3 (holding Section 11(b)'s language "'or otherwise' indicates Congressional intent to reach both government and private conduct under § 11(b)."); *Clean Elections USA*, 638 F. Supp. 3d at 1041 ("[T]he 'or otherwise' language in the statute is indicative of Congressional intent to regulate both private and public conduct under Section 11(b)."). Section 11(b)'s

18

text clearly establishes that Congress intended to remedy all violations of voting rights provided for thereunder.

In light of H.R. Rep. No. 89-439, many courts have concluded that Section 11(b) "sweeps broadly in accordance with Congress's goal of realizing, enforcing, and protecting the Fifteenth Amendment's right to vote." *Wohl*, 512 F. Supp. 3d at 509; *see Rhodes v. Siver*, No. 19-12550, 2021 WL 1565137, at *4 (E.D. Mich. Feb. 1, 2021) ("*Rhodes II*") ("This provision of the VRA is intended 'to be given an expansive meaning.'") (citing *Jackson v. Riddell*, 476 F. Supp. 849, 859 (N.D. Miss. 1979)). Thus, "a plaintiff bringing a Section 11(b) suit need not demonstrate that racial animus motivated the challenged conduct, nor does a plaintiff need to allege discrimination or racial targeting to prevail." *Id.* at 509; *see LULAC*, 2018 WL 3848404, at *4 ("[I]n the absence of plain statutory text, statutory history, or binding case law to the contrary, the Court does not find that a showing of specific intent or racial animus is required under § 11(b)."); *see also Willingham v. Cnty. of Albany*, 593 F. Supp. 2d. 446, 462 (N.D.N.Y. 2006) (finding Section 11(b) does not require proof that racial discrimination motivated the intimidation, threats, or coercion). "These conclusions are supported by the House report on § 11(b)." *Rhodes II*, No. 19-12550, 2021 WL 1565137, at *4.

Plaintiffs are aware of only two cases that incorrectly conclude Section 11(b) does not enforce the guarantees established by the Fourteenth and Fifteenth

19

Amendments. Neither are persuasive. First, in *Andrews*, although a district court found Section 11(b) contains rights-creating language, it misconstrued the second prong of the *Sandoval* analysis. In just one paragraph, the district court summarily stated that the party in that case did not identify authority stating Section 11(b) is designed to enforce the guarantees of the Fourteenth and Fifteenth Amendments. 696 F. Supp. 3d at 1351. However, numerous cases find just that. *See Ga. State Conf. of NAACP*, 2022 WL 18780945, at *5-*7; *Wohl*, 512 F. Supp. 3d at 509; *Kennedy*, 2024 WL 4031486, at *6; *Rhodes II*, No. 19-12550, 2021 WL 1565137, at *4.

*Andrews* also relied entirely on another case's flawed determination that Section 11(b) stems exclusively from the Elections Clause instead of the Fourteenth and Fifteenth Amendments. *Andrews*, 696 F. Supp. 3d at 1351 (citing *LULAC*, 2018 WL 3848404, at *3). In *LULAC*, the district court correctly found there was a private right of action under Section 11(b) but then incorrectly held "the Elections Clause – not the Fifteenth Amendment – [i]s the constitutional authority for § 11(b)." 2018 WL 3848404, at *3. This portion of *LULAC* was erroneously decided and predates the cases discussed above that correctly found Section 11(b) enforces the guarantees established by the Fourteenth and Fifteenth Amendments.

Rather than analyzing the Supreme Court precedent described above or Section 11(b) cases, *LULAC* looked at cases analyzing the Elections Clause. *Id.* The *Andrews* court improperly relied on *LULAC* instead of myriad other, newer and

20

better-reasoned decisions looking to the Fourteenth and Fifteenth Amendments. Other courts have recognized this error. *See Fair Fight I*, 710 F. Supp. 3d at 1283 n.58 (stating "[o]ther district courts, however, have held to the contrary" and pointing to *Krabach*, No. 2:22-CV-1252-BJR, 2023 WL 7018431, at *3 as an example). Moreover, *LULAC* mistakenly conflated the *right* to vote (as reflected in the Fifteenth Amendment) with specifics regarding the logistics of voting (as reflected in the Elections Clause).

In *Ex parte Yarborough*, the Supreme Court expressly recognized that the Fifteenth Amendment "may operate as the immediate source of a right to vote" while explaining that the Elections Clause specifically regulates the times, places, and manner of holding congressional elections. *Ex parte Yarborough*, 110 U.S. at 665; *see* U.S. Const. art. I § 4. Because the right to vote prescribed in the Fifteenth Amendment goes beyond the times, places, and manner of congressional elections, *LULAC* improperly narrowed the application of Section 11(b) by concluding the Elections Clause—rather than the Fifteenth Amendment—serves as its constitutional authority.

Such limitation is inappropriate when the Elections Clause works in tandem with the Fourteenth and Fifteenth Amendments. Congress passed the VRA to enforce the guarantees of the Fourteenth and Fifteenth Amendments. *See generally* H.R. Rep. No. 89-439 (1965). Because Section 11(b) is part of the VRA, those

21

guarantees extend to this statute. In analyzing the provisions of Section 11, the House Report provides that the Elections Clause of the Constitution empowers Congress "to reach intimidation by private individuals in purely local elections[,]" and Congress has an implied power "to protect Federal elections against corrupt influences[.]" H.R. Rep. No. 89-439 (1965). Notably, the House Report states that neither "requires a nexus with race." *Id.* Given both the Fourteenth and Fifteenth Amendments and the Elections Clause provide the constitutional authority for Section 11(b), a private remedy exists thereunder. For these reasons, Section 11(b) provides a private remedy and meets part two of the *Sandoval* test.

## III.  BECAUSE OTHER PROVISIONS OF THE VRA HAVE PRIVATE RIGHTS OF ACTION, THIS SUPPORTS FINDING ONE UNDER SECTION 11(B).

The Supreme Court has stated that "[t]he achievement of the Act's laudable goal could be severely hampered [ ] if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General." *Allen*, 393 U.S. at 556. Therefore, "[i]t is consistent with the ***broad purpose*** of the Act to allow the individual citizen standing to insure that his city or county government complies with the § 5 approval requirements." *Id.* at 557 (emphasis added); *Mich. Welfare Rights Org.*, 600 F. Supp. 3d at 105.

The Supreme Court has found implied private rights of action in provisions of the VRA similar to Section 11(b). For example, the Supreme Court has held there is

22

an implied private right of action under Section 5[6] and Section 10[7] of the VRA. *See Morse v. Republican Party of Va.*, 517 U.S. 186 (1996) (plurality opinion) (Section 10); *Allen*, 393 U.S. at 554-55 (Section 5)[8]; *see also Morse*, 517 U.S. at 232 (recognizing courts have found an implied private right of action under Section 2 of the VRA).

Notably, the Supreme Court issued the *Morse* decision in the new interpretive era regarding private rights of action, as discussed in *Sandoval*. *See Mich. Welfare Rights Org.*, 600 F. Supp. 3d at 105. And, as the *Morse* Court recognized, the decision in *Allen* was reinforced by subsequent amendments to the VRA. *Morse*, 517 U.S. at 233-34. As one court that extended the Supreme Court's logic to recognizing a private right of action under Section 10 of the VRA noted, "it would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action but § 10 is not, when all lack the same express authorizing language." *Mich. Welfare Rights Org.*, 600 F. Supp. 3d at 105. So too here—it would be equally as anomalous to hold Section 11(b) is not enforceable by private action.

*Morse* recognized that it is important to consider the VRA's legal context,

---

[6] 52 U.S.C. § 10304.

[7] 52 U.S.C. § 10306.

[8] In *Ziglar v. Abbasi*, 582 U.S. 120 (2017), the Court noted that "as a routine matter with respect to statutes, the Court would imply causes of action not explicit in the statutory text itself." *Id.* at 132 (citing *Allen* and other cases). *Ziglar* did not, however, overrule *Allen*.

which shows sections such as 11(b) have a private right of action. In *Morse*, the Supreme Court found the district court improperly denied a private right of action under Section 10 and "fail[ed] to give effect to our cases holding that our evaluation of congressional action 'must take into account its contemporary legal context.'" *Morse*, 517 U.S. at 230-31 (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 698-99 (1979).

Specifically, Congress amended Section 3 of the VRA to allow suits under any section of the VRA not just by the Attorney General but also "an aggrieved person," and added Section 14(e) to provide for attorneys' fees to prevailing parties "other than the United States." *Morse*, 517 U.S. at 233-34 (citing 52 U.S.C. §§ 10302(a), 10310(e)). As *Morse* noted, the Senate Report discussing those changes explained that the "purpose" of the change to Section 3 "was to provide the same remedies to private parties as had formerly been available to the Attorney General alone," and "[t]he same logic applies to § 14(e)" because private litigants are obviously the ones who would collect attorney's fees. *Id.* (citing S. Rep. No. 94-295, pp. 39-40 (1975)). This same logic applies to Section 11(b).

In a recent Northern District of Georgia decision by a three-judge panel including Judge Branch, the court similarly found a private right of action exists under Section 2 of the VRA, and that Congress's intent was to provide a private remedy to enforce the right created. *Ga. State Conf. of NAACP*, 2022 WL 18780945,

24

at *5-*7. In considering whether a private right of action exists under Section 2 of the VRA, the court looked to other sections of the VRA, specifically Sections 3 and 14. The court found the inclusion of the language "aggrieved persons" in Section 3 and the provision of attorney's fees in Section 14 "imply that private parties have a right to sue to enforce *some* provision or provisions of either the VRA or other federal laws." *Id.* at *5. Because Sections 3 and 14 imply a private right to sue to enforce the voting guarantees of the Fourteenth and Fifteenth Amendments,[9] the court concluded that Section 2 also provides a private right of action if it enforces the voting guarantees of the Fourteenth and Fifteenth Amendments. *Id.* at *6. So too with Section 11(b).

To determine whether Section 2 enforces the guarantees of the Fourteenth and Fifteenth Amendments, the *Georgia State Conference of NAACP* court looked to "the nature of the amendments' voting-related protections and how they intersect with the protections of Section 2." *Ga. State Conf. of NAACP*, 2022 WL 18780945, at *6. Section 2(a) provides that: "No voting … standard, practice, or procedure shall be imposed or applied … in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote." 52 U.S.C. § 10301. The district

---

[9] *See* 52 U.S.C. § 10302(a) ("Whenever the Attorney General or an aggrieved person institutes a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment . . ."); 52 U.S.C. § 10310(e) ("In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment . . .").

25

court found that Section 2 "does more" than the Fourteenth and Fifteenth Amendments because "Congress expanded Section 2's scope to prohibit both intentional *and unintentional* race-based discrimination in voting matters." *Ga. State Conf. of NAACP*, 2022 WL 18780945, at *6. Given "an action to enforce the protections of Section 2 is inevitably—at least in part—an action that 'enforce[s] the voting guarantees of the fourteenth or fifteenth amendment' as contemplated in Sections 3 and 14 of the VRA[,]" and that Section 2 and the amendments "share a core prohibition against intentional race-based discrimination," the court held that Section 2 "is among the proceedings that Congress has implied, in Sections 3 and 14 of the VRA, that private parties may assert." *Id.*

Similarly, Section 11(b) protects against all instances of voter intimidation, including intentional and unintentional race-based discrimination. *See* 52 U.S.C. § 10307(b) ("No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce **any person** for voting or attempting to vote[.]") (emphasis added). Section 11(b) thereby intersects with the Fifteenth Amendment which provides that "[t]he right . . . to vote shall not be denied or abridged . . . on account of race, color, or previous condition of servitude." U.S. Const. amend. XV. This is affirmed by Section 11(b)'s legislative history. H.R. Rep. No. 89-439, at 30 (1965). Thus, Section 11(b) and the Fifteenth Amendment clearly "share a core prohibition" against denying the right to vote.

Contrary to the district court's conclusion, it is irrelevant whether Section 11(b) makes any reference to race-based discrimination, *see* Doc. No. 42 at p. 18, because it would be redundant as Section 11(b) protects against all instances of voter intimidation. Section 11(b) inevitably enforces the voting rights guaranteed by the Fourteenth and Fifteenth Amendments. Therefore, like the court in *Georgia State Conference of NAACP* found regarding Section 2 of the VRA, there is also an implied private right of action under Section 11(b).

Many courts have specifically found that even though Section 12 of the VRA gives the Attorney General power to enforce various VRA sections, a private right of action still exists under Section 11(b). *See Ga. State Conf. of NAACP*, 2022 WL 18780945, at *7 ("the fact that Congress provided an express cause of action for the Attorney General to sue to enforce the VRA is not a 'suggestion . . . so strong that' it overcomes Congress's references to suits by private parties, in other sections of the VRA."); *Mich. Welfare Rights Org.*, 600 F.3d at 106 (noting that because Section 11(b) is designed for enforcement of the Fourteenth and Fifteenth Amendments, and the addition of Section 14(e) to provide attorneys' fees to litigants, it "cuts against the VRA's text to read § 12 . . . as the exclusive method for enforcing VRA §11(b)."); *Rhodes I*, No. 19-12550, 2021 WL 912393, at *1 (holding that Section 11(b) applies to private conduct "despite the Act's grant of enforcement authority to the Attorney General."); *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 223 (W.D. Tex. 2020)

27

("Congress did not intend to foreclose private causes of action by *also* granting the Attorney General enforcement authority."); *Ariz. Democratic Party v. Ariz. Republican Party*, No. 16-CV-03752, 2016 WL 8669978, at *4 (D. Ariz. Nov. 4, 2016) (§ 11(b) "does not exclude a private right of action for injunctive relief.").

Significantly, the Supreme Court and this Court have found private rights of action exist in similar statutes. *See Morse*, 517 U.S. at 233(finding a private right of action under Section 10, even though that section is also referenced in the Attorney General provision in Section 12); *Schwier*, 340 F.3d at 1295-96 (finding a private right of action under a similar statute despite provision allowing for Attorney General enforcement). Having "[a] markedly different finding for 11(b) based on *the same statutory text* and valid Supreme Court precedent would be an unjustifiable deviation." *Mich. Welfare Rights Org.*, 600 F.3d at 106. Permitting private individuals to remedy violations of their voting rights—rather than hoping the Attorney General will do so—comports with "Congress's goal of realizing, enforcing, and protecting the Fifteenth Amendment's right to vote." *Wohl*, 512 F. Supp. 3d at 509. This is especially true here, where a resident from south Georgia is seeking to remedy a violation of his voting rights. (*See generally* Doc. No. 28).

Congress created an implied private cause of action under Section 11(b). Section 11(b) contains "rights-creating language" and the statute's language—along

28

with the legal context in which it was drafted—shows Congress's intent to provide

a private remedy to enforce these rights.

## IV. STRICKLAND WILL PURSUE ALL AVAILABLE REMEDIES AGAINST JESSUP UNDER THE VRA.

Should this Court find that an implied private right of action exists under

Section 11(b), Strickland will be entitled to remedies, such as injunctive relief,

declaratory relief, and his attorneys' fees and costs of litigation. The VRA provides:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section . . . 10307 of this title . . . the Attorney General may institute . . . an action for preventative relief, including an application for a temporary or permanent injunction, restraining order, or other order[.]"

52 U.S.C. § 10308(d). The VRA further provides that "[i]n any action or proceeding

to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court,

in its discretion, may allow the prevailing party . . . a reasonable attorney's fee,

reasonable expert fees, and other reasonable litigation expenses as part of the costs."

52 U.S.C. § 10310(e).

The Supreme Court has stated that "[t]he Voting Rights Act does not explicitly

grant or deny private parties authorization to seek a declaratory judgment that a State

has failed to comply with the provisions of the Act." *Allen*, 393 U.S. at 544-45. Thus,

the Supreme Court held "that the restriction of § 14(b) does not apply to suits brought

by private litigants seeking a declaratory judgment" under Section 5 of the VRA. *Id.*

29

at 560. To that end, a Northern District of Georgia court implicitly found that declaratory relief is available under Section 11(b) when it held the plaintiffs were not entitled to a trial by jury where they "only [sought] injunctive relief, declaratory relief, and attorney's fees[.]" *Fair Fight Inc. v. True the Vote*, No. 2:20-CV-00302-SCJ, 2023 WL 11909714, at *3 (N.D. Ga. Sept. 13, 2023) ("*Fair Fight II*").

Courts have also held that injunctive relief is available for Section 11(b) violations. *See Fair Fight Inc. v. True the Vote*, No. 2:20-CV-00302-SCJ, 2024 WL 24524, at *118 (N.D. Ga. Jan. 2, 2024) ("*Fair Fight III*") (holding the district court could redress the defendants' harm because the plaintiff "continue[d] to reside in Georgia . . . [thus] any injunctive relief granted against [d]efendants making future Section 230 challenges . . . would redress the injury caused the conduct alleged in this case against Georgia voters."); *see also Colo. Mont. Wyo. State Area Conference of the NAACP v. U.S. Election Integrity Plan*, No. 22-cv-00581-PAB, at *14 (D. Colo. Apr. 28, 2022) ("Relief from the Court, in the form of an injunction and compensatory damages, as plaintiffs request . . . would allow NAACP to direct its resources back to its other civil rights and civic engagement priorities and would remedy past expenditures."); *Ariz. Republican Party*, No. 16-CV-03752, 2016 WL 8669978, at *4 (stating Section 11(b) "does not exclude a private right of action for injunctive relief."); *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 488 (S.D.N.Y. 2020) ("The Court's authority to issue any 'other order'

30

includes the authority to order 'whatever additional action is necessary to return individuals to their status quo ante' -- that is, the status quo before Defendants acted unlawfully -- including affirmative remedial action.").

Plaintiffs-Appellants ask for "a declaration that Sheriff Jessup has violated 11(b) of the Voting Rights Act and an injunction enjoining him and his agents from any further activity which intimidates voters." (Doc. No. 28, p. 22 ¶ 110). And in their "Prayer for Relief," Plaintiffs-Appellants ask the district court to "[f]ind Sheriff Jessup's actions are in violation of Section 11(b) of the Voting Rights Act" and to "[a]ward Plaintiffs their reasonable attorneys' fees, costs, and expenses[.]" (*Id.* at p. 23). Strickland is still a resident of McIntosh County and because McIntosh County will continue to have elections that he will have the opportunity to vote in, Strickland pleads that he "will continue to be injured by Sheriff Jessup's unlawful actions unless this Court grants relief." (*Id.* at p. 7 ¶ 27, p. 22 ¶ 108). Because these types of relief are provided under the VRA, Strickland will have remedial relief if the Court reverses the Order.

## CONCLUSION

For the foregoing reasons, Section 11(b) of the Voting Rights Act provides a private right of action. This Court should reverse the Order as to Strickland's Section 11(B) claim and remand to the district court for further proceedings.

Filed this 2nd day of October, 2025.

31

Respectfully submitted,

/s/ *Jake Evans*
Jake Evans
Philip J. George
Mikayla Mobley
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
jake.evans@gtlaw.com
philip.george@gtlaw.com
mikayla.mobley@gtlaw.com

*Counsel for Plaintiffs-Appellants,*
*Timothy Gardner, Teck Electric, LLC,*
*and Peter Strickland*

32

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7,667 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 2010 in Times New Roman, 14-point font.

By:  _____/s/ *Jake Evans*_____
Jake Evans

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing brief was filed in this Court and served

via CM/ECF on October 2, 2025 upon:

Richard K. Strickland
Emily R. Hancock
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue
Brunswick, Georgia 31520
Telephone: 912.264.9667
rstrickland@brbcsw.com
ehancock@brbsws.com

*Counsel for Defendant-Appellee*


By:    /s/ *Jake Evans*
          Jake Evans